UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JUSTIN EDMISTEN,[1] <br><br> Petitioner, <br><br> v. <br><br> WILLIAM GITTERE, et al., <br><br> Respondents. | Case No. 3:22-cv-00118-RCJ-CLB <br><br> **ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254** <br><br> [ECF No. 20] |

Petitioner Justin Edmisten, a Nevada prisoner, has filed a *pro se* Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 20 ("Petition").) This matter is before this Court for adjudication of the merits of the remaining grounds in the Petition,[2] which allege that his trial counsel failed to obtain a handwriting expert, failed to move for dismissal based on the prosecution's failure to preserve evidence, and failed to object to the prosecutor's closing argument regarding jury instruction number 30. For the reasons discussed below, this Court denies the Petition and a certificate of appealability.

**I.   BACKGROUND**

   **A.   Factual background**[3]

Meron Shiri testified that on December 31, 2017, she was working at a Terrible Herbst convenience store in Las Vegas, Nevada. (ECF No. 41-18 at 15.) At approximately 12:45 a.m.,

---

[1] Edmisten's name is spelled Edmiston in some of the state-court records.

[2] This Court previously dismissed grounds 1(b), 2(b), and 2(c). (ECF No. 64.)

[3] This Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the Petition. Any absence of mention of a specific piece of evidence does not signify this Court overlooked it in considering Edmisten's claims.

Edmisten, who was wearing a black hoodie, hat, and gloves, entered the convenience store and showed Shiri a piece of paper indicating that he would shoot her if she did not give him money.[4] (*Id*. at 15–17, 19.) Shiri gave Edmisten approximately $75. (*Id*. at 17–18.)

Heather Gouldthorpe, a forensic scientist with the Las Vegas Metropolitan Police Department, testified that she later compared Edmisten's known fingerprint to fingerprints located on the note given to Shiri and made the following conclusions: (1) Edmisten was excluded as the source of two of the fingerprints, (2) a third fingerprint "was not suitable for comparison," and (3) a fourth fingerprint, although not conclusive, "was consistent with Meron Shiri's fingerprints." (ECF No. 41-18 at 41–42, 49–51, 53.) Notably, Edmisten was seen on the surveillance video "wearing gloves for the duration of the incident." (ECF No. 41-19 at 9.)

Christian Daniels testified that on January 1, 2018, she was working at a Circle K convenience store in Las Vegas, Nevada. (ECF No. 41-24 at 9–10.) At approximately 7:00 a.m., she was having a conversation with a co-worker, Gwangi Thomas, when Edmisten "entered the store and pulled out a gun and point[ed] it in [her] face." (*Id*. at 10–11.) Edmisten was wearing a "hoodie jacket" that "had a buckle on the shoulder." (*Id*. at 13.) Daniels ran into a back office and "waited for the police there because [she] was scared." (*Id*. at 16.) Thomas testified that when Edmisten pointed the gun at Daniels, he said "Bitch, give me the money." (*Id*. at 26.) After Daniels ran to the back office, Thomas saw Edmisten look into the back office, look at the camera in the corner of the store, look at her, and then leave. (*Id*. at 30.)

Gary Miller testified that he was an acquaintance of Edmisten and would see him every few months. (ECF No. 41-24 at 43–45.) At one point, Edmisten handwrote a note and gave it to Miller. (*Id*. at 46–47.) Around January 1, 2018, Edmisten left his jacket at Miller's apartment. (*Id*.

---

[4] Shiri testified that she did not see a gun on Edmisten's person. (ECF No. 41-18 at 24.)

at 45, 50–51.) The next day, Miller saw a bulletin on the news about a robbery at a convenience store. (*Id*. at 52.) The newscast "show[ed] the picture of the guy and ask[ed] if anybody recognized the person." (*Id*. at 53.) Miller recognized the man as Edmisten and called the police. (*Id*. at 53–54.) The jacket that Edmisten was wearing in the photograph shown on the news was the same jacket that had been left at Miller's apartment. (*Id*. at 54.)

Erik Perkett, a detective with the Las Vegas Metropolitan Police Department, testified that he took the jacket, which had gloves in a pocket, and the note from Miller's apartment after Miller called the police. (ECF No. 41-24 at 60, 66.) Kenden Slattery, a police officer with the Las Vegas Metropolitan Police Department, testified that at approximately 2:50 a.m. on January 3, 2018, he stopped Edmisten outside the Veridian Apartments. (ECF No. 41-18 at 54, 57) Based on briefing from detectives on a wanted robbery suspect, Officer Slattery arrested Edmisten. (*Id*. at 60.) After the arrest, Detective Perkett noticed that Edmisten was wearing the same shoes that he was seen wearing "on the video surveillance stills in the robberies." (ECF No. 41-24 at 72.) Detective Perkett impounded those shoes. (*Id*.)

The jury found Edmisten guilty of burglary, robbery, burglary while in possession of a deadly weapon, and two counts of attempted robbery with the use of a deadly weapon. (ECF No. 41-24 at 120.) After the jury verdict, the state court indicated a second portion of the trial was necessary because the prosecution intended to pursue the sixth charge from its original indictment: ownership or possession of a firearm by a prohibited person.[5] (*Id*. at 121.) The prosecution moved to admit Edmisten's following certified judgments of conviction to show that he was prohibited

---

[5] Edmisten's counsel stated, outside the presence of the jury, that, "[a]gainst [the] advice of counsel," Edmisten was not going to plead guilty to the sixth charge even though the prosecution had agreed to run the sentence for the sixth charge concurrent with his other sentence if Edmisten pleaded guilty. (ECF No. 41-24 at 122.)

from possessing a firearm: possession of a controlled substance with the intent to sell, possession of a controlled substance, robbery, and burglary. (*Id*. at 126–27.) The jury then found Edmisten guilty of ownership or possession of a firearm by a prohibited person. (*Id*. at 130.)

### B.      Procedural background

Edmisten was sentenced to an aggregate of 120 to 300 months in prison. (ECF No. 41-29 at 4.) Edmisten appealed, and the Nevada Supreme Court affirmed on September 18, 2020. (ECF No. 42-38.) On January 12, 2021, Edmisten filed a state petition for post-conviction relief. (ECF No. 42-45.) The state court denied Edmisten post-conviction relief on July 15, 2021. (ECF No. 43-8.) Edmisten appealed, and the Nevada Court of Appeals affirmed on December 9, 2021. (ECF No. 43-18.)

Edmisten filed the instant Petition on June 17, 2022. (ECF No. 20.) Respondents moved to dismiss the Petition, arguing that Edmisten raised unexhausted claims, a factually undeveloped claim, and conclusory claims. (ECF No. 40.) On November 8, 2022, this Court granted the motion, in part, finding that grounds 1(b), 2(b), and 2(c) were unexhausted. (ECF No. 58.) Edmisten moved to voluntarily abandon his unexhausted grounds, so this Court dismissed grounds 1(b), 2(b), and 2(c) without prejudice as unexhausted. (ECF No. 64.) Respondents answered the remaining grounds in the Petition on May 1, 2023. (ECF No. 81.) Edmisten did not file a reply to Respondents' answer,[6] but it appears that his filing on January 1, 2023, is intended to be his reply to his Petition.[7] (ECF No. 67.)

---

[6] In its order granting, in part, the motion to dismiss, this Court gave Edmisten "30 days following service of Respondents' answer in which to file a reply." (ECF No. 58 at 12.) Respondents' answer was filed and served on May 1, 2023, so Edmisten's deadline for filing a reply expired on May 31, 2023.

[7] This assumption is confirmed by Edmisten's statement in his recently filed motion to vacate sentence that his "reply . . . is already on file." (ECF No. 85.)

4

## II. GOVERNING STANDARDS OF REVIEW

### A. The Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### B. Ineffective assistance of counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that counsel's "representation fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III. DISCUSSION

#### A. Ground 1(a)—trial counsel's failure to obtain a handwriting expert

In ground 1(a), Edmisten alleges that his trial counsel rendered ineffective assistance because he failed to obtain a handwriting expert to examine the Terrible Herbst robbery note. (ECF No. 20 at 3–5.)

##### 1. Background information

During cross-examination of Detective Perkett, Edmisten's trial counsel asked whether the following investigations took place: (1) whether there were any photographic lineups conducted, (2) whether there were any physical lineups conducted, (3) whether the jacket and gloves were submitted for DNA testing, and (4) whether Edmisten's handwritten note was compared to the robbery note given to the cashier at Terrible Herbst. (ECF No. 41-24 at 74–75.) Detective Perkett responded to each of these questions in the negative. (*See id.*)

### 2. State court determination

In affirming the state court's denial of Edmisten's state postconviction petition, the Nevada Court of Appeals held:

> Edmisten claimed his trial counsel was ineffective for failing to retain a handwriting expert to examine a handwritten note given to a convenience store clerk during a robbery. Edmisten did not allege that a handwriting expert would have provided favorable testimony had counsel retained such an expert. Moreover, there was strong evidence of Edmisten's guilt presented at trial as three victims identified him as the perpetrator of the offenses and surveillance recordings depicted him committing the crimes. Accordingly, Edmisten failed to allege specific facts that demonstrated his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel retained a handwriting expert. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 43-18 at 3.)

### 3. Counsel's investigatory duties

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. And "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* This investigatory duty includes investigating the defendant's most important defense and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994); *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

### 4. Analysis

"[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S.Ct. 2405, 2410 (2021) (quoting *Richter*, 562 U.S. at 86). Here, Edmisten's allegation that his counsel should have retained a handwriting expert to compare his handwritten note to the robbery note fails to rebut this strong presumption. In fact, "the absence of evidence cannot overcome" the presumption. *Id*. As the Nevada Court of Appeals reasonably noted, there has been no evidence presented demonstrating that a handwriting expert's testimony would have exculpated Edmisten. This dearth of information and failure to demonstrate what evidence an expert would have provided refute Edmisten's allegation that counsel was deficient. Moreover, as can be seen by Edmisten's trial counsel's cross-examination of Detective Perkett, rather than obtain a handwriting expert to examine the robbery note, Edmisten's counsel challenged the robbery note by highlighting the State's failure to do a handwriting analysis. This apparent strategy to demonstrate that the police's investigation of the robberies was inadequate was reasonably sound. *See Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Additionally, as the Nevada Court of Appeals reasonably determined, Edmisten fails to demonstrate a reasonable probability that, but for not hiring a handwriting expert, the result of his trial would have been different. It is mere speculation that hiring a handwriting expert would have produced fruitful evidence of Edmisten's innocence. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."); *Wildman v, Johnson*,

9

261 F.3d 832, 839 (9th Cir. 2001) (explaining that the petitioner "has not shown that his case was prejudiced as a result of not retaining an arson expert" because the petitioner "offered no evidence that an arson expert would have testified on his behalf at trial" and such speculation "is insufficient to establish prejudice"); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (explaining that speculation as to what an expert would say is not enough to establish prejudice).

Therefore, the Nevada Court of Appeals' determination that Edmisten failed to demonstrate deficiency or prejudice constituted objectively reasonable applications of *Strickland*'s performance and prejudice prongs and was not based on an unreasonable determination of the facts. Edmisten is not entitled to federal habeas relief for ground 1(a).

**B.      Ground 1(c)—trial counsel's failure to move for dismissal**

In ground 1(c), Edmisten alleges that his trial counsel rendered ineffective assistance because he failed to move for dismissal due to the State's failure to preserve evidence, namely, the robbery note. (ECF No. 20 at 3–5.)

**1.      Background information**

Stephanie Thi, a senior crime scene analyst with the Las Vegas Metropolitan Police Department, testified that she did "chemical processing" with ninhydrin and silver nitrate on the robbery note to find fingerprints, but this testing is "considered destructive testing" because "once that type of testing is done[,] it essentially warps the note itself." (ECF No. 41-19 at 5, 10–11, 22.) Thi testified that only "[s]ome of the writing [was] still visible" on the note at the time of the trial. (*Id*. at 19.) However, "[f]or the purposes of handwriting analysis, a photograph was taken with a scale prior to the processing that was conducted on the note." (*Id*. at 22.) Thi testified that she chose to use ninhydrin to test the robbery note because it "targets amino acids [which are part of

10

the latent print residue] and is a suitable chemical for . . . use on items such as paper," which are porous. (*Id.* at 25.)

### 2. State court determinations

In its order affirming Edmisten's judgment of conviction, the Nevada Supreme Court held:

> Edmiston first argues that the State's fingerprint testing damaged a robbery note found at the first crime scene. He contends that it hindered his defense because handwriting analysis could have shown that he did not write the note.
> > [FN2] To the extent Edmiston contends he was unable to conduct an independent fingerprint analysis, we conclude this argument lacks merit. The State's analyst excluded Edmiston as the source of the identifiable fingerprints, and nothing prevented him from conducting independent testing of the unidentifiable fingerprint. Moreover, Edmiston has not shown that additional fingerprint testing would have affected the outcome of the trial.
>
> We disagree, as Edmiston neither argues the State acted in bad faith nor shows the absence of this potential evidence prejudiced him in light of the strong evidence of his guilt adduced at trial, including eyewitness testimony and surveillance video from both stores. *See Sparks v. State*, 104 Nev. 316, 319, 759 P.2d 180, 182 (1988) (holding that the loss or destruction of evidence warrants reversal only "if (1) the defendant is prejudiced by the loss or, (2) the evidence was 'lost' in bad faith by the government"); *Boggs v. State*, 95 Nev. 911, 913, 604 P.2d 107, 108 (1979) ("It is not sufficient that the showing disclose merely a hoped-for conclusion from examination of the destroyed evidence . . . [or] that examination of the evidence would be helpful in preparing [a] defense.").

(ECF No. 42-38 at 2–3.) And in affirming the state court's denial of his state postconviction petition, the Nevada Court of Appeals held:

> Edmisten claimed that his trial counsel was ineffective for failing to file motions to preserve materials for independent testing or requesting an acquittal. Edmisten appeared to assert that the State improperly failed to preserve a handwritten note and his counsel should have moved to dismiss the case based upon the failure to preserve the note. Edmisten argued on direct appeal that the State improperly damaged the note during testing for fingerprints, and the Nevada Supreme Court concluded that Edmisten was not prejudiced by any failure by the State to preserve the note as there was strong evidence of his guilt presented at trial. *Edmiston v. State*, No. 76814, 2020 WL 5633674 (Nev. Sept. 18, 2020) (Order of Affirmance). In light of the strong evidence of Edmisten's guilt presented at trial, he failed to demonstrate a reasonable probability of a different outcome had counsel field motions to preserve the note or request dismissal of the case based upon any failure by the State to preserve the note. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 43-18 at 5.)

### 3. Preservation of evidence

The State's loss or destruction of potentially exculpatory evidence violates due process when the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004). "The presence or absence of bad faith by the police . . . must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.*. Even negligence in failing to preserve potentially useful evidence is not sufficient to constitute bad faith and does not violate due process. *Id.* at 58.

### 4. Analysis

The Nevada Court of Appeals reasonably determined that Edmisten failed to demonstrate prejudice stemming from his trial counsel's lack of a request for dismissal of the charges against him due to the State's destruction of the robbery note. Indeed, as the Nevada Supreme Court reasonably noted on direct appeal, Edmisten failed to allege that the State acted in bad faith regarding the robbery. As Thi testified at trial, the chemical processing of the robbery note was needed to evaluate the note for fingerprints because paper is porous. *See Youngblood*, 488 U.S. at 59 ("[T]he police do not have a constitutional duty to perform any particular tests."). And Thi also testified that a photograph was taken of the robbery note with a scale for purposes of later-needed handwriting analysis. Based on this record, Edmisten fails to demonstrate that the State acted in

bad faith, so he fails to demonstrate that the trial court would have granted a motion to dismiss based on the destruction of evidence if his trial counsel had filed one.

Accordingly, the Nevada Court of Appeals' determination that Edmisten failed to demonstrate prejudice constituted an objectively reasonable application of *Strickland*'s prejudice prong and was not based on an unreasonable determination of the facts. Edmisten is not entitled to federal habeas relief for ground 1(c).

### C.     Ground 2(a)—trial counsel's failure to object during closing argument

In ground 2(a), Edmisten alleges that his trial counsel rendered ineffective assistance because he failed to object to the prosecution's closing argument relating to jury instruction number 30. (ECF No. 20 at 6–8.)

#### 1.     Background information

Jury instruction number 30 provided as follows:

> If you find the Defendant guilty of Burglary and/or Attempt Robbery, for the counts involving Circle K, then you must also determine whether or not a deadly weapon was used in the commission of these crimes.
> If you find beyond a reasonable doubt that a deadly weapon was used during the commission of the Burglary and/or Attempt Robbery, then you are instructed that the verdict of Burglary While in Possession of a Deadly Weapon and/or Attempt Robbery With Use of a Deadly Weapon are the appropriate verdicts.
> If you find beyond a reasonable doubt that the Defendant committed the crime of Burglary and/or Attempt Robbery but did not use or possess a deadly weapon during the commission of the offense, then you are instructed that the verdict of Burglary and/or Attempt Robbery is the appropriate verdict.
> You are instructed that you cannot return a verdict of both Burglary While in Possession of a Deadly Weapon and Burglary. Likewise, you are instructed that you cannot return a verdict of both Attempt Robbery With Use of a Deadly Weapon and Attempt Robbery.

(ECF No. 41-20 at 33.)

During closing argument, the prosecutor made the following comments:

> Moving on to Counts (3) through (5), now we're talking about the Circle K event. Burglary while in possession of a deadly weapon. We've already talked about the element of burglary, now we add a firearm, a deadly weapon.
> Instruction 17 says the crime of burglary, while in possession of a firearm, constitutes burglary while in possession of a deadly weapon. Let's go through the facts of that event.
> The Defendant entered the building, namely the Circle K. We all saw Christian Daniels and Gwangi Thomas positively identify the Defendant as the man who entered that store. Not only that but there's very clear video surveillance showing us the Defendant in that store with the intent to commit a felony, again, robbery in this case.
> Gwangi Thomas testified that when he put that gun up and pointed at Christian Daniels, he said, bitch, give me the money. What does that tell us about intent. That's his intent to get the money, which is robbery. While in possession, the final element, of a firearm. Again from the very clear video we see the Defendant wielding a very large firearm. Both of those women talked about that firearm. You saw how it affected Christian Daniels to talk about it.
> A firearm, according to Instruction 18, means any device. We talk - - the judge read this. What's important here is that a firearm is a deadly weapon when loaded or unloaded, operable or inoperable. We don't know if the gun was loaded. We don't know if it worked. And it doesn't matter. The fact he had it and he pointed it at her completes that element. He was in possession of that gun when he went in to burglarize that store.
> The State is not required to have recovered the deadly weapon. I'm sure you've all noticed we haven't shown you a gun in court in the last couple of days. According to Instruction 20, that doesn't matter. We, the State, do not have to recover that deadly weapon to prove and establish that he used it in commission of that crime. The video is very clear that he used it. You can use your common sense and reasonably infer that he used that gun.
> Count (3) the appropriate box there on the top, guilty of burglary while in possession of a deadly weapon.

(ECF No. 41-24 at 104–105.)

In conclusion, the prosecutor asked the jury to find Edmisten guilty of burglary of the Terrible Herbst, guilty of robbing Shiri, *guilty of burglary while in possession of a deadly weapon of the Circle K*, guilty of attempted robbery with the use of a deadly weapon against Daniels, and guilty of attempted robbery with the use of a deadly weapon against Thomas. (*Id.* at 112.)

//

//

### 2. State court determination

In affirming the state court's denial of his state postconviction petition, the Nevada Court of Appeals held:

> Edmisten claimed his trial counsel was ineffective for failing to "resolve" jury instruction no. 30 as it related to the State's closing argument concerning charges stemming from crimes committed at a Circle K convenience store. Edmisten appeared to assert the State improperly urged the jury to find he was guilty of both burglary and burglary while in possession of a deadly weapon for the same incident, that argument violated a jury instruction, and his counsel should have objected when the State made the improper argument.
>
> Jury instruction no. 30 informed the jury that Edmisten was charged with burglary while in possession of a deadly weapon due to an incident at the Circle K. The instruction informed the jury that, in order to find Edmisten was guilty of burglary while in possession of a deadly weapon, it had to find beyond a reasonable doubt that he used a deadly weapon during the commission of the offense. The instruction also stated that if the jury found beyond a reasonable doubt that Edmisten committed burglary but that he did not use a deadly weapon in the commission of that offense, it could properly find Edmisten guilty of simply burglary. The instruction further informed the jury that it could not find that Edmisten committed both burglary and burglary while in possession of a deadly weapon for his actions at the Circle K, but rather it could only find guilt for one of those charges.
>
> During its closing argument, the State did not urge the jury to find Edmisten guilty of both burglary and burglary while in possession of a deadly weapon for the Circle K incident. Rather, the State urged the jury to find Edmisten guilty of burglary while in possession of a deadly weapon for the Circle K incident. Because the State did not urge the jury to convict Edmisten of both burglary and burglary while in possession of a deadly weapon for the incident at the Circle K, Edmisten's claim was belied by the record. Moreover, the jury was instructed that it could only find Edmisten guilty of either burglary or burglary while [in] possession of a deadly weapon, but not both charges, for his actions at the Circle K, and jurors are presumed to follow the trial court's instructions. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004). And the jury ultimately convicted Edmisten of burglary while in possession of a deadly weapon, and not burglary, for the Circle K incident. Accordingly, Edmisten failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel objected to the State's closing arguments concerning the underlying issues. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 43-18 at 3–4.)

//

### 3. Analysis

Based on this Court's review of the prosecution's closing and surrebuttal closing arguments, the Nevada Court of Appeals reasonably determined that the prosecution never suggested that the jury find Edmisten guilty of both burglary and burglary while in possession of a deadly weapon for the Circle K incident. The only comment that comes remotely close to making that suggestion is the prosecutor's following statement: "We've already talked about the element of burglary, now we add a firearm, a deadly weapon." (ECF No. 41-24 at 104.) However, when examined in context, the prosecutor was merely commenting that he had already discussed the elements of burglary when he talked about count 1 regarding the burglary of the Terrible Herbst. Contrary to Edmisten's contentions, as the Nevada Court of Appeals reasonably noted, the prosecutor consistently urged the jury to find Edmisten guilty of burglary while in possession of a deadly weapon for the Circle K incident. (*Id*. at 104, 112.) Because the prosecutor never made any argument that contradicted jury instruction number 30, the Nevada Court of Appeals reasonably concluded that Edmisten failed to demonstrate deficiency or resulting prejudice from his trial counsel's lack of an objection. Consequently, the Nevada Court of Appeals' determination constituted objectively reasonable applications of *Strickland*'s prejudice and performance prongs and was not based on an unreasonable determination of the facts. Edmisten is not entitled to federal habeas relief for ground 2(a).

## IV. PENDING MOTIONS

Edmisten has moved for this Court (1) to reconsider his bail, (2) to vacate his sentence, (3) for an eviction notice, and (4) to kick him out of the state. (ECF Nos. 80, 85, 87, 88.) Given this Court's denial of Edmisten's Petition, these motions are baseless.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Edmisten. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). This Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id*.

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that the amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 **[ECF No. 20] is denied**, and a certificate of appealability is denied.

IT IS FURTHER ORDERED that the motions for bail reconsideration **[ECF No. 80]**, to vacate his sentence **[ECF No. 85]**, for an eviction notice **[ECF No. 87]**, and to kick him out of the state **[ECF No. 88] are denied**.

IT IS FURTHER ORDERED that the Clerk of Court enter judgment and close this case.

Dated: August 10, 2023

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

17